## ABNER PERRY *et al. versus* JOHN HOLDEN.

The *St.* 1836, *c.* 238, to regulate the assignment and distribution of the property of insolvent debtors, provides that the assignment shall be so made as to give to each of the creditors who shall become parties to it, an equal share of the property, in proportion to their respective debts, without any preference, excepting &c., and that no assignment or conveyance made by an insolvent debtor to assignees or trustees for the use of any of his creditors, shall be valid and effectual against an attachment or execution in behalf of a creditor who is not a party to it, unless it is made in the manner above described, and so as to allow all the creditors to become parties to it ; and that a debtor making such an assignment shall be discharged from all debts due to any of his creditors who shall become parties to it, but that if sued for any such debt, he shall have no benefit of his discharge, if in contemplation of such an assignment he voluntarily made any transfer or conveyance of any part of his property with a view to give to any creditor a preference over other creditors. Before the repeal of this statute, instructions were given, at the same time, by an insolvent debtor, for drawing a mortgage of a part of his property to secure the payment of certain creditors in full, and a general assignment of all his property, subject to the mortgage, in trust to be distributed ratably among all his creditors who should become parties to the assignment, pursuant to the statute ; the mortgagees were also the trustees under the assignment ; the mortgage was executed by the debtors and accepted by one of the mortgagees before the execution of the assignment, but the assignment was executed before the mortgage was accepted by the other mortgagees ; and the assignment contained an express release of the demands of the creditors by whom it should be signed. It was *held*, that the mortgage and assignment were to be construed together as one instrument, and as the mortgage gave a preference to certain creditors, the mortgage and the assignment both were void as against attaching creditors.

REPLEVIN for a quantity of printed goods. Plea, the general issue, with a brief statement that the defendant, on the 3d of August, 1837, attached the goods, as a deputy sheriff, on several writs against Caleb B. Turner and Wells Laflin, partners under the firm of Turner & Laflin, as the goods of Turner & Laflin. Trial before *Dewey* J.

The plaintiffs were Abner Perry, Heman Laflin and Gershom Turner. They claimed the property in the goods, under a mortgage and assignment from Turner & Laflin, dated the 20th of April, 1837.

By the deed of mortgage Caleb B. Turner and Wells Laflin convey to the three plaintiffs and to Walter Laflin and Joseph M. Boies, the goods in question and other personal property to a large amount, on the condition that if the mortgagers shall save Heman Laflin and Perry harmless, from all their

liabilities for the mortgagers, and shall pay to the plaintiffs severally all the debts due to them respectively from the mortgagers, and shall pay to Walter Laflin and Boies the sum of $ 1600 due to them from the mortgagers, then the deed shall be void.

The assignment was by an indenture between C. B. Turner and Wells Laflin of the first part, the plaintiffs of the second part, and the several other persons, creditors of C. B. Turner and Wells Laflin who should become parties thereto, of the third part. By this indenture C. B. Turner and Wells Laflin assign and convey all their joint property, real, personal and mixed, consisting of dwelling-houses, manufactories, water privileges, stocks, machinery, manufactured and unmanufactured goods, dye-stuffs, &c., and choses in action, to the plaintiffs, in trust to sell and dispose of the same and from the proceeds to pay the expenses of carrying the assignment into effect, and to divide the net proceeds ratably among all the creditors who shall become parties to the indenture. " This assignment is made subject to any and every mortgage of any part of the abovenamed real or personal estate heretofore made and executed by the said Caleb B. and Wells." The plaintiffs accept the assignment, and covenant with the parties of the first and third parts, that they will faithfully execute the trusts. " And the said several other persons, creditors of said Caleb B. and Wells, and parties to this assignment of the third part, do severally accept said assignment, and approve of the terms and conditions thereof, and in consideration thereof they do severally release and discharge the said Caleb B. and Wells of and from all and singular their several claims and demands against them, the said Caleb B. and Wells, of every name and nature." This indenture was executed and acknowledged by Caleb B. and Wells, and executed by the plaintiffs, on the 20th of April, 1837 ; and on the same day Caleb B. and Wells made oath, before a justice of the peace, that by the assignment they had conveyed all their property not exempted by law from attachment, for the benefit of all their creditors, according to the true intent and meaning of an act, (*St.* 1836 *c.* 238,) entitled an act to regulate the assignment and distribution of the property of insolvent debtors.

The mortgage and assignment were drawn at Lee and carried by the attorney who drew them, to Adams, where Caleb B. and Wells lived, and all the papers were executed as hereinafter stated, at the house of Wells, between 7 and 11 o'clock in the evening of the 20th of April, 1837, and delivered in the order in which they were intended to take effect This mortgage and the other mortgages hereafter mentioned, dated on the 20th of April, were executed in the first place and delivered to Perry, who accepted the same in behalf of himself and the other mortgagees, naming the plaintiffs only, and went immediately with a witness and took possession of the property mortgaged. While Perry was absent, the last clause and the attestation were added to the assignment, also the certificate of the oath and acknowledgment, and the seals. After his return the assignment was executed by him and by the assignors. A messenger took the mortgage and the assignment to the register's office at Lanesborough, to be recorded. At South Adams, on his way to Lanesborough, he called on Gershom Turner and told him that Caleb B. and Wells had made the mortgage to secure, among other things, his liabilities for them and his demands against them, and that Perry had taken possession for himself and the other mortgagees, and the messenger asked him whether he would accept the same. He accepted it, and likewise an absolute deed of land to him, from Caleb B. Turner, on the same evening. After a lapse of some minutes the messenger showed him the assignment and he executed it. The messenger left the assignment at the register's office to be recorded, and afterwards met Heman Laflin between Pittsfield and Lenox and informed him of the mortgage, and of Perry's possession. Heman accepted it, also an absolute deed of land to him from Wells Laflin, and a mortgage of land to himself and the other plaintiffs from Caleb B. Turner and Wells Laflin, on the same evening. Afterwards the messenger informed him of the assignment; and Heman went to the register's office and executed it.

The plaintiffs met at Adams in the afternoon of the 21st of April, and were seen together going towards the works of Turner & Laflin. Perry remained at Adams and had possession of the mortgaged property as before stated, until the

goods were attached, and forbid the defendants interfering with the goods at the time when he made the attachment; and before the attachment he showed him the mortgage and assignment. The plaintiffs, on the 31st of August, 1837, made a statement in writing of the demand for which the property was liable, and demanded payment of the same of the cashier of the Adams bank, the bank being one of the attaching creditors, which was refused. The plaintiffs, after the assignment and before the attachment, had expended money in finishing the printed goods. There was no evidence that Walter Laflin and Boies, named in the mortgage first mentioned, ever accepted or assented to it.

The intention of the parties at the time was, that the instruments should take effect in the order in which they were delivered at Adams, and according to the terms of the different instruments. The assignment was made to be subject to the mortgage. The mortgage and assignment were drawn in pursuance of instructions from Wells Laflin on the 19th of April, to secure the mortgagees, and then to convey all the remainder of the property of Turner & Laflin for the benefit of all their creditors, according to the statute of 1836. They were preparing at the same time. The assignment was executed at Adams from half an hour to two hours after the mortgage. Perry alone, of the plaintiffs, was present or acted in the transaction of the 20th of April, at Adams, and he had no authority to act for the other plaintiffs; who first knew of the proceedings from the messenger, and assented to them, as before stated. There was no evidence that any creditor of Turner & Laflin had ever assented to the assignment, except what appeared from the assignment itself.

By agreement of the parties the Court were to render judgment for the plaintiffs or the defendant, on default or nonsuit, or direct a trial by jury, as they should deem proper.

*Porter* and *Byington*, for the plaintiffs, argued that the mortgage to the plaintiffs, made by the insolvent debtors in contemplation of a general assignment of their property for the benefit of their creditors, was valid, and that the assignment also was valid. Before the enactment of *St.* 1836, *c.* 238, a creditor of an insolvent person was allowed to secure the whole of his

debt by an attachment on mesne process, and a debtor had the correlative right to give a preference to any one of his creditors ; and a general assignment in trust for creditors was valid to the amount of the demands of those creditors who became parties before any attachment was made, but as to the property not required to pay those demands it was ineffectual against attaching creditors. Under this system it was not in the power of an honest debtor to make a ratable distribution of his property among his creditors, unless they should all assent to that course. This was the great evil which this statute was designed to remedy. The legislature intended to enable a debtor to make such a distribution, if he should think proper. The statute is permissive, not compulsory. It does not take away the right to prefer a creditor, nor that of a creditor to attach, previously to the making of a general assignment, but it secures the property from attachment after an assignment made in pursuance of the statute. The inducement to the debtor to make such an assignment was, that he would thereby entitle himself to a discharge from his debts, to the parties to the assignment, and the inducement to the creditor to become a party was, that he would otherwise be left without remedy for his demand. By § 9, the debtor is to have no benefit from his discharge, in case he has given advantage to one creditor by a deed of preference. This shows that a preference may be given, and the consequence will be, not that the assignment will be void, but that the discharge will be inoperative. If the preference were given in the assignment itself, the assignment would be void, by § 11. But this assignment is not void under that section, for it is strictly conformable to the statute. The mortgage is not void, for the statute refers to assignments *in trust* for creditors. The attaching creditor is not entitled to favor, any more than the mortgagees ; in securing more than a ratable proportion of his demand one proceeds against the policy of the law as much as the other. It will be said that the two instruments constitute one transaction. But the object of the rule on this subject is to carry into effect the intention of the parties. *Wallis* v. *Wallis*, 4 Mass. R. 135 ; *Worthington* v. *Hylyer*, 4 Mass. R. 205 ; *Ellis* v. *Welch*, 6 Mass. R. 250 ; *Clap* v. *Draper*, 4 Mass. R. 266 ; *Quarles*

v. *Quarles,* 4 Mass. R. 690 ; *Holbrook* v. *Phinney,* 4 Mass. R. 566 ; *King* v. *King,* 7 Mass. R. 496.   If it were doubtful which of the two instruments was first executed, the Court would hold that the mortgage was, since otherwise there would be no property on which it could operate.   And to construe both to be one transaction, would, by § 11, render both void. Where two instruments are executed at the same time, are between the same parties, relate to the same subject matter, and are designed to effect the same object, they will be regarded as one transaction. *Isham* v. *Morgan,* 9 Connect. R. 374, 378 ; *Stow* v. *Tifft,* 15 Johns. R. 458.   But in no one of these particulars does the present case come within this rule.   A statute provision in Connecticut, similar to the 11th section of our statute, has received a judicial construction. *Bates* v. *Coe,* 10 Connect. R. 283.   See also *Foster* v. *Saco Manuf. Co.* 12 Pick. 451 ; *Nostrand* v. *Atwood,* in Berkshire, 1837 ; *Brashear* v. *West,* 7 Peters, 608.

Should the Court adjudge the mortgage to be void, the assignment will be valid, as then it will conform to the statute ; and if the assignment is void, then the mortgage is valid.   See Amer. Jurist, *Vol.* 19, *p.* 304 ; *Egbert* v. *Woods,* 3 Paige, 521.

*Alvord* and *Robinson,* for the defendant, contended that the mortgage and assignment were to be construed together as one instrument ; *Taylor* v. *Horde,* 1 Burr. 107 ; *Jackson* v. *Dunsbagh,* 1 Johns. Cas. 91 ; *Van Horne* v. *Crain,* 1 Paige, 455 ; *Hills* v. *Miller,* 3 Paige, 254 ; *Makepeace* v. *Harvard College,* 10 Pick. 298 ; *Harrison* v. *Phillips' Academy,* 12 Mass. R. 462 ; *Chickering* v. *Lovejoy,* 13 Mass. R. 51 ; *Carey* v. *Rawson,* 8 Mass. R. 159 ; that they were intended to give a preference to particular creditors, and thereby to defeat the object of the statute, and consequently were void ; that the provision of the statute, that in case of a preference given, the debtor shall derive no benefit from his discharge, was by no means intended to affirm the validity of the assignment, but the validity was left to depend on the general principles of law ; and that in this respect there was an analogy between our statute and the bankrupt law of England, where, in the case of a preference, if the creditor is aware of the debtor's intention to

take advantage of the bankrupt law, the security by way of preference is void ; Cooke on Bankr. Law, (8th ed.) 368 ; *Thornton* v. *Hargreaves*, 7 East, 544 ; *Morgan* v. *Horseman*, 3 Taunt. 241 ; *Cook* v. *Rogers*, 7 Bingh. 438 ; *Locke* v. *Winning*, 3 Mass. R. 325 ; *Ogden* v. *Jackson*, 1 Johns. R. 370.

SHAW C. J. drew up the opinion of the Court. This is an action of replevin for printed goods and other personal property to a large amount. The plaintiffs claim the property in the double capacity of mortgagees and assignees in trust, or rather in one of these capacities, under a mortgage and assignment made by Turner & Laflin ; the defendant is a deputy sheriff, who attached them, as the property of the same Turner & Laflin. The mortgage and the assignment set forth in the case stated, were both made some time before the attachment, and if they, or either of them, give the plaintiffs a good title, they will hold the goods against the attachment.

Several objections are made to the title of the plaintiffs and their right to recover, besides the main question hereafter considered. The mortgage was made to five persons, and the action is brought by three of them only. It being a deed poll and delivered to some of the grantees for the use of all, it would seem to vest the property in all, unless the dissent of the two were shown. But in case of such dissent, it would still be very questionable, whether, as the conveyance was intended to be made to five, if the five did not accept, it must not be considered as incomplete and inchoate merely, until the acceptance of all the grantees. But we have passed over all other questions, without thinking it necessary to express any opinion upon them, in order to come to the question which arises upon the construction of the statute, *St.* 1836, *c.* 238.

The avowed purpose of this statute was, to regulate the assignment and distribution of the property of insolvent debtors. One great object and purpose of it was, to discourage preferences amongst creditors, and to insure an equal distribution of the debtor's property This great principle of natural equity, is kept in view in every system of distribution of effects, when the assets are insufficient to pay the whole, both upon a distribution *inter vivos*, and upon the death of the insolvent debtor. There

*Perry*
*v.*
*Holden.*

*Sept.* 17th,
1839.

are two provisions in this statute, intended to enforce and carry this principle into effect. One is, (§ 3 and 11,) that no assignment shall be valid, unless it is so made as to give to each of the creditors who shall become parties to it, an equal share of the property, with the exception of debts preferred by law. Another section provides, that all creditors shall have a right to become parties. The result of both provisions is, that all the creditors of the insolvent shall be entitled to an equal distribution. The other provision, founded on the same principle of equity and policy, is, that the debtor shall have no benefit of his discharge, if he has, in contemplation of an assignment, made any payment, or made any conveyance of his property, with a view to give any creditor a preference.

In the present case, it is contended, that the assignment itself is void, under the 3d and 11th sections of the statute above cited, which requires that the assignment shall be so made as to give every creditor an equal share without preference, and declares every assignment void, which is not so made.

What would be the effect of a previous mortgage of the personal property of the debtor, made in contemplation of an assignment, with or without the knowledge of the mortgagee that such was the intent, either upon the validity of the mortgage or of the assignment, we give no opinion. But on the present state of facts, the Court are of opinion, that the mortgage and the assignment are, in point of law, to be considered as constituting one transaction; the mortgage is made part of the assignment, and therefore, by force of the statute, both are void.

Instructions were given at the same time, by the debtors, for drawing the mortgage and the assignment. The same persons are trustees under the assignment, and mortgagees under the mortgage. Though the mortgage was executed a few hours first by the debtor, and accepted by one of the mortgagees, yet the assignment was executed before the mortgage was accepted by the other mortgagees. And the object and purpose of both was the same, namely, to transfer the property of insolvent debtors, so as to secure payment, in whole or in part, to their creditors. The assignment referred to these

mortgages, and excepted them from its operation. Whoever should become party to the assignment, was thus put upon inquiry, and might know the circumstances under which the mortgages were made, and of course that they were in law, part of the assignment itself. Instruments made at the same time, between the same parties, to accomplish one and the same object, shall be construed and taken together, as one transaction. *Carey* v. *Rawson*, 8 Mass. R. 159 ; *King* v. *King*, 7 Mass. R. 499. And the same is held, as to deeds between different parties. *Chickering* v. *Lovejoy*, 13 Mass. R. 51.

It is also a well settled rule, that where a deed refers to another deed or instrument, such other deed is to be deemed a part of it, as if recited in the later deed.

On every view which we have been able to take of the case, the Court are of opinion, that the mortgage and assignment must be construed together as parts of one and the same transaction, and one arrangement, conveyance and disposition of the insolvent's property. Then as the assignment expressly refers to the mortgages and is made subject to them, and as the mortgages do give a preference to creditors by first securing the available personal property to certain creditors to the exclusion of others, the assignment, by force of the statute, is invalid and void, as against an attaching creditor.

And the Court are also of opinion, that it follows as a necessary consequence, that the property cannot be held by the plaintiffs, under the mortgage, because the mortgage cannot be considered as an independent transaction, but as part of the assignment. There are no means of ascertaining that the mortgage would have been given by the debtors and accepted by the preferred creditors, if it had been prepared and executed without the assignment. Very probably the inducement to the debtors, to execute the mortgage, was, that the mortgagees, having themselves been thus secured and preferred, would become trustees and assignees under the assignment. And if it be said that the debtors thereby would not have had the benefit of the discharge under the assignment, it may be answered by the suggestion, that in this instance, the assignment drawn at the same time with the mortgage, contained an express stipulation for a discharge by every creditor who should sign the as-

Perry
*v.*
Holden.

signment, which the debtors may have supposed *would operate so as to give* them a discharge on the part of all those who should sign the assignment. And as no visible property remained subject to attachment, the creditors might be induced to sign it, by the hope of obtaining something out of the property. The Court are of opinion that the attachment was good, and that there must be

*Judgment for the defendant.*